NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0519n.06

No. 24-3319

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| 655 DEARBORN PARK LANE, LLC, | ) | |
| Defendant-Appellant, | ) | |
| | ) | **FILED** |
| | ) | Dec 12, 2024 |
| v. | ) | KELLY L. STEPHENS, Clerk |
| | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| COLOGIX COL5, LLC, | ) | |
| Plaintiff-Appellee. | ) | OPINION |
| | ) | |

Before: KETHLEDGE, LARSEN, and MATHIS, Circuit Judges.

KETHLEDGE, Circuit Judge. 655 Dearborn Park Lane, LLC appeals the district court's grant of Cologix Col5, LLC's motion for judgment on the pleadings. We vacate and remand.

Dearborn owns a four-acre parcel of land in Franklin County, Ohio. In August 2022, Cologix conditionally agreed to purchase that parcel from Dearborn to build a "data center facility" there. Agreement § 8.1(a)(ii). Under § 8.1(a)(ii) of the contract, Cologix could terminate the deal if Cologix was "not satisfied as a result of its due diligence of the Property (as reasonably demonstrated to Seller)" that it could develop the property "as a data center facility[.]" The contract also provided that Cologix was entitled to return of its downpayment ($300,000) if it properly terminated the contract under § 8.1(a)(ii). Agreement § 4.2.

Data centers use large amounts of electricity, so the contract expressly recited "available utility power to the Property" as a potential concern. Agreement § 8.1(a)(ii). During due diligence, Cologix identified high-voltage lines near the property as a potential source of electricity. But Cologix also identified a natural-gas pipeline and related easement that ran between the high-

voltage lines and the property—raising a concern, apparently, about whether Cologix could connect the property to those lines. Eventually, in October 2022, Cologix informed Dearborn that it was terminating the contract because of its concerns about its ability to access the high-voltage power lines. In a follow-up email a week later, Cologix elaborated on its decision:

> To help you understand our decision, I am willing to state that one of the biggest concerns with any data center is the ability to obtain sufficient electrical power to the Property. For this property, we believe that electrical power would come from AEP via high voltage lines from the west. However, given the placement of the gas distribution pipeline (and the related easement) we weren't satisfied that AEP could deliver the necessary power to the Property—we weren't satisfied that AEP could locate its power lines around the gas pipeline easement. As a result, we weren't satisfied that we could develop the property as a data center, and we properly terminated the Agreement during the Inspection Period.

Dearborn refused to authorize a refund of Cologix's down payment for the property, so Cologix brought this suit. Cologix moved for judgment on the pleadings, which the district court granted. We review that decision de novo. *Warrior Sports, Inc. v. NCAA*, 623 F.3d 281, 284 (6th Cir. 2010).

The parties agree that Ohio law governs this dispute. Ohio courts interpret contracts according to their plain meaning. *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). Here, the dispute focuses on the contract's termination clause, in § 8.1(a)(ii). That clause provides in relevant part:

> (a) Notwithstanding anything to the contrary set forth in this Agreement, this Agreement may be terminated at any time prior to Closing:
>
> (ii) At any time prior to the expiration of the Inspection Period by Purchaser if Purchaser is not satisfied as a result of its due diligence of the Property (as reasonably demonstrated to Seller) that the Property can be developed by Purchaser as a data center facility (including, without limitation, as it relates to title or survey matters, zoning, available utility power to the Property or environmental issues)[.]

-2-

Thus, to terminate the contract under § 8(a)(ii), Cologix must not be "satisfied" that it can develop the property as a data-center facility, "as a result of its due diligence of the property (as reasonably demonstrated to Dearborn)." Here, Cologix claims it was not satisfied that it could develop the property as a data-center facility. The question, then, is whether Cologix's lack of satisfaction was the "result of its due diligence of the Property (as reasonably demonstrated to [Dearborn])."

The parties dispute what must be "reasonably demonstrated to" Dearborn, to satisfy this clause. Cologix argues—and the district court seemed to agree—that Cologix needed only to show that "it was not actually satisfied that it could develop the property as a data center facility." Appellee's Br. at 16. Dearborn counters that the basis for Cologix's dissatisfaction "must be demonstrated to a degree that would satisfy a reasonable person." Appellant's Br. at 5-6.

We read this provision largely as Dearborn does. Section 8.1(a)(ii) requires more than that Cologix simply was unsatisfied that it could develop the property as a data-center facility. Instead, Cologix's lack of satisfaction must have been the "result of its [*i.e.*, Cologix's] due diligence of the property (as reasonably demonstrated to Seller)[.]" That much, the provision's express terms make clear.

The provision's implications are likewise clear enough. Cologix must also do more than show that its lack of satisfaction was, in fact, based—reasonably or not—on its due diligence. That reading, as a practical matter, would elide the "as reasonably demonstrated" language, and make § 8.1(a)(ii) applicable upon Cologix's attestation alone. What Cologix must demonstrate, rather, is that its lack of "satisfaction" was not only based on its due diligence, but reasonably so. Section 8.1(a)(ii) requires that Cologix have good reasons—as a result of its due diligence alone—to doubt whether it can develop the property as a data-center facility. And if Cologix has those reasons, it

need not bet the contract's purchase price or its $300,000 downpayment that it can develop the property for that purpose nonetheless.

The district court, for its part, granted judgment on the pleadings solely on the ground that Cologix had undisputedly communicated the fact of its dissatisfaction to Dearborn. As shown above, however, § 8.1(a)(ii) requires more than that: Cologix must demonstrate that its lack of "satisfaction" was reasonably based on its due diligence.

The district court's judgment is vacated, and the case is remanded for proceedings consistent with this opinion.